# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

EDGAR B.,                              )
                                       )
    Plaintiff,                    )
                                       )
        v.                   )    Case No. 1:23-cv-1218
                                       )
MARTIN O'MALLEY, Acting                )
Commissioner of Social Security,       )
                                       )
    Defendant.                    )

## ORDER & OPINION

This matter is before the Court on motion of Plaintiff Edgar B. ("Plaintiff") to reverse or remand the denial of his application for disability insurance benefits. (Doc. 8). Defendant Commissioner[1] provided a Brief in opposition (doc. 13), seeking to uphold the decision to deny benefits, and Plaintiff replied (doc. 14). The matter is therefore ripe for review. For the following reasons, the Court affirms the decision of the Administrative Law Judge ("ALJ").

### PROCEDURAL BACKGROUND

Plaintiff Edgar B. filed a Title II application for disability insurance benefits on August 5, 2019, alleging an onset date of April 16, 2019. (R. at 160–66).[2] The Social Security Administration denied Plaintiff's application initially on October 21, 2019, and again on reconsideration on January 24, 2020. (R. at 97–100, 105–08). Plaintiff

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk will substitute Martin O'Malley, Acting Commissioner of Social Security, as Defendant in this case.

[2] Citation to "R. at __" refers to the page in the certified transcript of the record of proceedings provided by the Social Security Administration.

requested a hearing before an ALJ, which took place on February 2, 2021. (R. at 34–65). The ALJ's decision, concluding Plaintiff is not disabled within the meaning of the Act and therefore ineligible for benefits, was issued on February 21, 2021. (R. at 12–65). The Social Security Administration Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (R. at 1–6). Plaintiff appealed the denial to the District Court of South Carolina,[3] which remanded the matter for further administrative proceedings. (R. at 716–38). In doing so, the court found the ALJ erred when calculating Plaintiff's residual functional capacity, failed to adequately explain his reasoning, and incorrectly excluded discussion on the potential limitations of Plaintiff's migraines, even if his migraines were found to be a non-severe impairment. (R. at 733–36). On remand, the ALJ was instructed to evaluate the evidence and adequately explain his decision regarding Plaintiff's residual functional capacity. (R. at 737). After a hearing on February 7, 2023, the ALJ issued a decision that again concluded Plaintiff was not disabled and therefore not eligible for disability benefits. (R. at 640–65, 600–19). The Appeals Council did not assume jurisdiction of Plaintiff's case, rendering the decision of the ALJ final pursuant to 20 C.F.R. § 404.984. Plaintiff filed the instant Complaint on June 6, 2023. (Doc. 1).

## FACTUAL AND MEDICAL BACKGROUND

Prior to Plaintiff's alleged disability onset date of April 19, 2019, he worked as a tractor-trailer truck driver and served in the U.S. Marine Corps. (R. at 193, 459–60). He has a high-school education and was thirty-seven years old at the time of his

---

[3] Plaintiff previously resided in South Carolina and filed for disability there. (R. at 645). He moved to Illinois after 2021. (R. at 645).

first application. (R. at 618). The following is a summary[4] of Plaintiff's medical records submitted to the ALJ related to his migraines, the hearing before the ALJ on February 7, 2023, and the decision of the ALJ dated February 20, 2023.

## I. Summary of Plaintiff's Medical History

Plaintiff's alleged mental impairments relate back to his deployment. While overseas in Iraq, he worked to transport supplies. (R. at 460). In 2008, his vehicle triggered an explosive device that caused an accident and rendered him unconscious for approximately ten minutes. (R. at 460). In this accident, Plaintiff suffered a concussion and traumatic brain injury. (R. at 460). He also received a head injury while boxing with a fellow Marine in 2003. (R. at 460). These experiences caused Plaintiff to suffer from migraines. (R. at 460).

To treat his migraines, Plaintiff has mostly received care from two providers, Dr. Stephen Cayelli and Dr. John Jachna. In February 2020, Plaintiff reported that his migraines were "getting worse" to Dr. Cayelli, who later started him on preventative medication in July 2020. (R. at 521, 561–64). Dr. Cayelli deferred any further testing but noted it "may be needed in the future." (R. at 517). In April 2020, Dr. Jachna recorded decreased symptoms related to migraines, but later in June 2020, Plaintiff informed him that he continued to have pain related to his migraines. (R. at 533–34, 545). Plaintiff reported to Dr. Jachna that he had trouble remembering to take the medication for his migraines. (R. at 545).

---

[4] The summary focuses on migraines as Plaintiff's arguments solely concern this impairment. (*See* doc. 8).

Dr. Jachna provided his opinion in April 2020 regarding Plaintiff's inability to hold gainful employment due to limitations caused by his mental impairments. (R. at 460). State agency consultative physicians reviewed Plaintiff's medical record with respect to his mental impairments, and opined Plaintiff had only mild limitations and that none of his impairments were severe. (R. at 71–72, 87). These findings were reaffirmed upon review. (R. at 697–704, 707–15).

More recently, Plaintiff has received health care services through the Patient Aligned Care Team ("PACT") at the Department of Veterans Affairs in Danville, Illinois. (R. at 1074–149). Plaintiff informed the PACT that he has twenty "headache days per month." (R. at 1090). The team continued medication management. (R. at 1142).

## II.   Hearing Before the ALJ

On February 7, 2023, Plaintiff appeared via teleconference before an ALJ to testify about the limitations he has experienced since April 16, 2019. (R. at 640). He was represented by an attorney, and a vocational expert ("VE") was present to testify. (R. at 642).

Plaintiff's testimony largely covered his work history, daily living activities, and symptoms. Namely, Plaintiff detailed his duties while actively deployed in the military as a Marine, and then as a tractor-trailer truck driver. (R. at 648–49). Plaintiff described his migraines and other mental-health issues, and how they contribute to the limitations he alleges. (R. at 650–57). As to daily activities, Plaintiff takes care of his service dog, watches television, and spends the majority of his day in the supine position (i.e., laying down). (R. at 651–55). At the time of the hearing,

4

he lived with his fiancée and two of her children. (R. at 647). When asked by his attorney, Plaintiff provided an update as to his increased mental-health symptoms stemming from PTSD—which cause him to have frequent nightmares and migraines and avoid being in public. (R. at 654). He similarly struggles with depression. (R. at 656). Lastly, Plaintiff confirmed that he has a Veterans Affairs disability rating. (R. at 657).

The VE then testified to the classification of Plaintiff's work and other suitable jobs in the national economy. He stated that the Directory of Occupational Titles ("DOT") rated Plaintiff's previous job as a tractor-trailer truck driver as semi-skilled with medium intensity and stated that Plaintiff functioned in the light range. (R. at 658). In response to a hypothetical in which a person with the same characteristics as Plaintiff had the same residual functional capacity with the same work-related limitations, the VE stated that this hypothetical individual would not be able to perform Plaintiff's previous job. (R. at 659). However, the VE noted three other jobs (electronics worker, office helper, and laundry worker) that would be feasible, and that roughly 162,000 of these jobs exist in the national economy. (R. at 660). The ALJ then asked the VE to consider a further postural limitation of balancing with a handheld assistive device (e.g., a cane) necessary only to access the workstation, and in response the VE narrowed the available jobs (electronics worker and office helper) to roughly 67,000 jobs in the national economy. (R. at 660). When asked, however, the VE explained there would likely be no competitive employment available if the same hypothetical person were off-task twenty percent or more of a workday or absent

three or more days per month. (R. at 661). Further, when asked, the VE stated there would likely be no competitive employment if the same hypothetical person required no interaction with the public or co-workers, and only occasional interaction with supervisors. (R. at 663).

## III.   Decision of the ALJ

A five-step sequential analysis is employed to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). At step one, the ALJ determines whether the plaintiff is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the plaintiff's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the plaintiff's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). At step three, the ALJ determines whether any of the plaintiff's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 of C.F.R. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ evaluates the plaintiff's residual functional capacity ("RFC") and determines whether the plaintiff can perform past relevant work based on the RFC. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC represents the most a plaintiff can do given his limitations. 20 C.F.R. § 404.1545(a). An RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Finally, at step five, the ALJ determines whether the plaintiff can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may require the testimony of the VE to make a step-five determination. The burden of proof is on the

6

plaintiff for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Applying the five-step inquiry, the ALJ here concluded Plaintiff is not disabled within the meaning of the Act. (R. at 619). While the ALJ found that Plaintiff's spine disorders, obesity, depression, and PTSD could be classified as medically determinable severe impairments under 20 C.F.R. § 404.1520(c), he did not find that Plaintiff's migraines or hypertension qualified. (R. at 605–06). The ALJ found none of Plaintiff's impairments met the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. at 606). The ALJ concluded Plaintiff could not perform his past relevant work but could adjust to other work that exists in significant numbers in the national economy. (R. at 618–19). In doing so, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift up to 20 pounds occasionally; lift and carry up to 10 pounds frequently; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday with normal breaks; occasionally climb ladders, ropes, scaffolds, ramps, or stairs; occasionally stoop, crouch, kneel, or crawl; frequently balance with a handheld assistive device (device is used to ambulate to the work station, but is not needed at the work station); limited to occasional use of moving machinery and occasional exposure to unprotected heights; work is limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and with few, if any, workplace changes; capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; the individual can perform simple tasks for two hour blocks of time with normal rest breaks during an eight-hour workday; with no interaction with the public, and only occasional interaction with coworkers.

(R. at 609).

7

## LEGAL STANDARD

Courts have the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is obligated to "review the entire record, but [does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). It is the ALJ's responsibility to "build an accurate and logical bridge from the evidence to her conclusion," and the ALJ "may not ignore evidence that undercuts her conclusion." *Spricher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (citations and internal quotation marks omitted). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## DISCUSSION

Plaintiff raises numerous arguments to explain how the ALJ erred in determining him not eligible for disability insurance benefits under the Act. The dispute centers on the ALJ's analysis of Plaintiff's migraines. First, he argues that the ALJ improperly found that Plaintiff's migraines did not qualify as a severe impairment. (Doc. 8 at 5–6). Second, Plaintiff puts forth several reasons as to how the ALJ did not properly assess his credibility and evaluate his RFC. (Doc. 8 at 6–12). Plaintiff's primary requested relief is to remand this case for further consideration consistent with a finding of disability. (Doc. 8 at 12).

The Commissioner, in opposition, argues Plaintiff has not met his burden and has not demonstrated error on the part of the ALJ. (Doc. 13 at 1). Instead, the Commissioner states the ALJ properly supported his decision with substantial evidence, formulated a proper RFC, and was not required to mention each piece of evidence. (Doc. 13 at 2–6). For relief, the Commissioner seeks affirmance. (Doc. 13 at 6).

### I. Consideration of Plaintiff's Migraines at Step Two

Plaintiff's first argument is that the ALJ failed to adequately explain how his migraines were not a severe impairment at the second step of the analysis. (Doc. 8 at 8–9). Relatedly, Plaintiff contends that while the ALJ did accept that Plaintiff suffers from migraines, the ALJ did not confront evidence that undermined his conclusion to find Plaintiff not disabled, nor did he "cast doubt on the frequency or duration of [Plaintiff's] migraines" as purportedly required by relevant case law. (Doc. 8 at 8–9). In response, the Commissioner clarifies that it is a plaintiff's burden to prove that an

impairment is severe, and once an ALJ finds even one impairment to be severe, it is sufficient to consider the "aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." (Doc. 13 at 1–2) (quoting *Golombiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

At this step of the sequential analysis, an ALJ is required to determine whether the claimant has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The claimant bears the burden to prove that the impairment is severe. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). Generally, "the step two determination of severity is 'merely a threshold requirement.' " *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010) (citation omitted).

As stated, the ALJ found Plaintiff's spine disorders, obesity, depression, and PTSD to be severe impairments while finding his hypertension and migraines to be non-severe impairments. (R. at 606). In arguing that his migraines should have been considered severe, Plaintiff relies on *Victoria A. v. Saul* for the contention that failure to find an impairment severe at step two can constitute reversible error when the ALJ improperly ignores evidence of the impairment. No. 19-cv-00216, 2020 WL 3950534, at *5 (S.D. Ind. June 19, 2020). There, the ALJ failed to acknowledge the impairment in the second step of the analysis and did not include the plaintiff's migraines in determining the aggregate effect of all impairments. *Id.* The ALJ in

10

*Victoria A.* ignored evidence that the plaintiff had a migraine diagnosis, was prescribed medicine specifically for it, and reported having multiple headaches per week that included constant throbbing and sensitivity. *Id.* Here, however, the ALJ acknowledged Plaintiff's migraines at step two, describing his symptoms as testified to at hearing, listing the medication he takes specifically for migraines, and explaining that Plaintiff can "sleep them off." (R. at 606). He then included that Plaintiff's "headaches were treated with [medication] throughout the relevant period, suggesting this impairment caused no more than minimal limitations." (R. at 606). Plaintiff points out that the ALJ did not include Plaintiff's statements regarding his sensitivity to light. (Doc. 8 at 9).

While an ALJ need not mention every piece of evidence, *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016), he cannot "cherry-pick" evidence to highlight only facts that corroborate his position, *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). In his decision, the ALJ included several details regarding Plaintiff's migraine symptoms and treatment—a significantly greater amount of detail than the faulted ALJ in *Victoria A.* (R. at 606). Additionally, the ALJ here mentioned evidence that both supported and undermined his conclusion. Because he was not required to mention each piece of evidence, the Court finds that this step-two analysis was not in error.

Plaintiff also asserts that the ALJ failed to assess the frequency and duration of his migraines and consider the work-related limitations Plaintiff testified to. (Doc. 8 at 8–9). He quotes *Michelle L.M. v. Kijakazi*: "[w]hen an ALJ accepts that a claimant

11

suffers from migraines but concludes that [he] is not disabled, there are generally two possible explanations. Either the ALJ found that the claimant did not suffer migraines at a disabling frequency, or the migraines were not of a disabling severity." No. 22-cv-00151, 2023 WL 3835583, at *9 (S.D. Ind. June 6, 2023). These arguments are misplaced and simply do not relate to an ALJ's discussion at step two of the sequential analysis. It seems Plaintiff erroneously wove his step-two argument into an argument regarding the ALJ's RFC determination and ultimate decision, which will be addressed in turn. In sum, Plaintiff's first argument regarding error at step two is without merit as the ALJ did not ignore migraine-related evidence.

## II.   Credibility Assessment & RFC Determination

The majority of Plaintiff's arguments are related to the ALJ's assessment of his credibility and work-related limitations. He starts with the ALJ's credibility determination, arguing the evaluation of his reported symptoms was improper; in support, Plaintiff generally points to his own testimony and statements. (Doc. 8 at 6–7). The Commissioner rebuts Plaintiff's assertion that he has greater limitations than those determined by the ALJ, pointing out that his subjective symptoms are not conclusive evidence of a disability, and that he did not submit objective medical evidence as support. (Doc. 13 at 3–4).

An ALJ's evaluation of a claimant's subjective symptoms will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding 'special deference' . . . .") (quotation omitted). To show that the evaluation is patently wrong, a claimant must demonstrate that the evaluation lacks "any explanation or support." *Horr v. Berryhill*, 743 F.App'x. 16, 20

(7th Cir. 2018). The assessment requires the ALJ to first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (applying guidelines from SSR 16-3p). Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects" of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *Id*.

Here, the ALJ wrote, "I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 610). The Seventh Circuit has warned against and criticized language like this, calling it "meaningless boilerplate." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). However, if the ALJ provides specific reasons for discrediting a plaintiff's testimony, courts will uphold the credibility determination. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

In support of the finding that Plaintiff's allegations were inconsistent with the record, the ALJ explained how Plaintiff has engaged in a normal level of daily activity and interaction. (R. at 610). The ALJ discussed how Plaintiff cares for his service animal, watches television, plays video games, shops on his cell phone, and visits with others at his home, and reasoned that these activities are "the same as those

13

necessary for obtaining and maintaining employment." (R. at 610). The ALJ went on to describe how the objective medical record is inconsistent with Plaintiff's allegations regarding the severity of his symptoms. (R. at 612-14). The analysis regarding Plaintiff's migraines was minimal; however, the ALJ noted that the nature of his treatment record was routine and conservative at step two. (R. at 606). There, the ALJ discussed the frequency of Plaintiff's migraines as testified but found his ability to sleep them off and minor treatment history suggested no more than a minimal limitation. (R. at 606).

The ALJ provided various reasons for disbelieving Plaintiff. He mainly discounted the allegations regarding the severity and frequency of his migraines because they were not in proportion to the medical record, citing Plaintiff's treatment record that suggested his impairment was properly managed with medication. (R. at 606). While an "individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016), it is also true that subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A); *Grotts, v. Kijakazi,* 27 F.4th 1273, 1278 (7th Cir. 2022). Plaintiff did not point to any objective evidence in the record suggesting a medical provider opined Plaintiff would require greater limitations than those imposed by the ALJ. *Gallaher v. Kijakazi*, No. 20-cv-3010, 2022 WL 16630945, at *3 (C.D. Ill. Sept.

23, 2022) (holding an ALJ does not commit error when declining to "impose a limitation that no doctor included") (citing *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

If Plaintiff is arguing that his testimony required the ALJ to impose limitations to account for absences or breaks, "subjective complaints are the opposite of objective medical evidence and, while relevant," are not required to be accepted by the ALJ. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). The plaintiff "bears the burden to prove she is disabled by producing medical evidence." *Gedatus*, 994 F.3d at 905. The ALJ provided legitimate reasons for finding Plaintiff's complaints were exaggerated in comparison to his treatment history, building a logical bridge between the evidence and his conclusion. *See, e.g. Elaina M. v. Kijakazi*, No. 22 C 6279, 2023 WL 4707557, at *7 (N.D. Ill. July 24, 2023) (finding the credibility analysis proper when "the ALJ discounted the plaintiff's allegations about the intensity of her pain because they were out of proportion with the medical record"). Therefore, this consideration was proper, and Plaintiff has not met the "heavy burden" of demonstrating the credibility analysis lacked any support, which is required to be patently wrong. *Milliken v. Astrue*, 397 F. App'x 218, 225 (7th Cir. 2010).

Frequently mentioned by Plaintiff is that "migraines and their symptoms are not subject to objective verification." (Doc. 8 at 10; doc. 14 at 1, 2, 3) (citing *Michelle L. M. v. Kijakazi*, No. 22-cv-00151, 2023 WL 3835583 (S.D. Ind. June 6, 2023) and *Cynthia N. B. v. Kijakazi*, No. 22-cv-6912, 2023 WL 4625779 (N.D. Ill. July 19, 2023)). However, Plaintiff's interpretation of this case law is not convincing. In those cases,

generally, the ALJ pointed to objective evidence within the record and reasoned that because the medical findings were unremarkable, the plaintiff's allegations were discounted. In other words, the ALJs misinterpreted regular findings, casting doubt on the severity and frequency of symptoms while ignoring that medical tests are used to "rule out other possible causes of headache" and can be "completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The Seventh Circuit clarified that this "mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Id*.

Here, the ALJ did not look to regular examinations, unremarkable medical test results, or other lack of objective documentation to discount Plaintiff's subjective complaints related to his migraines. Instead, the ALJ pointed to a conservative treatment history that suggests Plaintiff's migraines were minimally limiting, or in other words, controlled with medication. (R. at 606). Plaintiff has not cited any objective medical records supporting the limitations proposed in his testimony. This Court does not read the case law to mean that a plaintiff does not have to meet his burden to establish disability as required by 20 C.F.R. § 404.1512(a). Nor does this Court think an ALJ is now permitted to accept subjective complaints as conclusive of disability in violation of 42 U.S.C. § 423(d)(5)(A). *See Jones v. Kijakazi*, No. 19-cv-3275, 2022 WL 4537864, at *3 (C.D. Ill. Sept. 27, 2022) ("To the extent that Plaintiff alleges the ALJ discounted his subjective allegations due to the lack of objective

medical findings, the ALJ is required to consider the record medical evidence which consists of objective findings.").

Plaintiff's other argument is that the ALJ found his allegations to be inconsistent with his daily activities without considering his suggestion that he cannot participate in those activities when actively suffering from a migraine. (Doc. 8 at 7-9). He relies on *Krev v. Saul*, No. 18-cv-1742, 2020 WL 58068, at *3 (E.D. Wis. Jan. 6, 2020), arguing that the ALJ failed to evaluate the duration, frequency, and intensity of his migraines, and his daily activities do not "undercut his testimony" because migraines are periodically disabling (doc. 8 at 8). Plaintiff correctly reminds this Court that migraines are a "challenging impairment." (Doc. 14 at 1).

It is true that when an ALJ discounts allegations as to the severity or frequency of migraines due to the plaintiff's daily activities, courts have labeled this reasoning as "flawed," pointing to the episodic nature of the impairment. *See Krevs v. Saul,* No. 18-cv-1742, 2020 WL 58068, at *3 (E.D. Wis. Jan. 6, 2020) (finding the plaintiff's daily activities "may be limited to times when [he] is not suffering from migraines, or performed in a limited fashion despite his migraines"); *Gould v. Kijakazi*, No. 21-cv-308, 2022 WL 541511, at *3 (E.D. Wis. Feb. 23, 2022) ("[W]hen assessing a claimant's activities of daily living . . . the fact that she reports often engaging in robust activities is not as probative in the context of migraines as it may be with, for example, certain common physical impairments."). The ALJ did not consider the episodic nature of his migraines when discussing his daily activities; however, this does not rise to the level of reversible error. *See, e.g., Dailey v. Colvin*, No. 14-cv-00294, 2015 WL 331859, at

17

*6 (S.D. Ind. Jan. 21, 2015) ("Though the ALJ mischaracterized some of Dailey's activities, the credibility determination was not patently wrong."). The ALJ's reasoning may have been flawed in part, but the remainder of the analysis stands because it is not "patently wrong," or lacking any support. The determination of Plaintiff's credibility was "based on the totality of . . . factors and enough of them withstand scrutiny to support [the] decision." *See Tutwiler v. Kijakazi*, No. 22-cv-2808, 2023 WL 8461648, at *3 (7th Cir. Dec. 7, 2023). In sum, Plaintiff's arguments related to the ALJ's credibility analysis lack merit. If Plaintiff is asking the Court to assign greater weight to his subjective reports of symptoms, this is outside the Court's purview.

The arguments remaining are related to the ALJ's RFC assessment and Plaintiff's work-related limitations. Plaintiff takes issue with the ALJ's failure to confront certain evidence and alleges the ALJ did not support his decision with substantial evidence. (Doc. 8 at 6). The Commissioner argues that the ALJ's decision is read as a whole, and the ALJ properly considered the migraines in step two of the disability analysis and included limitations supported by the record in the RFC assessment. (Doc. 13 at 2–3).

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The RFC must be assessed based on all the relevant evidence in the record, 20 C.F.R. § 404.1545(a)(1), and "need not contain a complete written evaluation of every piece of evidence," *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citations

omitted). Plaintiff argues the RFC determination was incorrect because the ALJ failed to consider his absences and need for breaks. Additionally, "while an ALJ must consider limitations and restrictions imposed by an individual's impairments, even those that are non-severe, the RFC need only incorporate limitations supported by the claimant's medical record." *Monique B. v. Saul*, No. 19-cv-652, 2020 WL 4208112, at \*13 (N.D. Ill. July 22, 2020) (citing 20 C.F.R. § 404.1545(a)(2); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

Generally, Plaintiff argues that the ALJ should have included limitations to account for additional breaks and absences due to his migraines, and that the ALJ did not sufficiently explain the limitations he assigned Plaintiff. (Doc. 8 at 6, 8–9). Briefly, as stated, the Court determined that the ALJ's credibility analysis was proper; thus, the ALJ did not have to consider Plaintiff's statements in formulating the work-related limitations. In reviewing the decision and considering the record, the Court will not reweigh the evidence. *See Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). While Plaintiff disagrees with the ALJ's assessment of his limitations, he has not established that the medical record was insufficient to support the ALJ's factual determinations, nor has he pointed to objective evidence in the record supporting his purported limitations. Simply put, Plaintiff's testimony is not enough to establish time-off-task limitations were necessary, and an ALJ need only include limitations as supported by the record. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

In the RFC analysis, the ALJ limited Plaintiff to occasional use of moving machinery and occasional exposure to unprotected heights after considering his migraine history, obesity, and lumbar degenerative disc disease with radicular symptoms. (R. at 614, 615). While the Court agrees that the ALJ's analysis could have been more fruitful in explaining why each impairment required the respective limitations, meeting the substantial evidence standard "is not a high threshold," *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), and means nothing more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). In his decision, the ALJ did not mention each piece of evidence related to Plaintiff's migraines. But he was not required to. *See Loveless*, 810 F.3d at 507. Instead, he summarized the information that was submitted to the record regarding Plaintiff's migraine history, including how often he reported a headache, and discussed the impairment in assigning Plaintiff's functional limitations. That he was required to do. *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (holding the ALJ properly considered the limiting effects of the plaintiff's obesity in combination with other impairments when the ALJ summarized evidence and accounted for the impairment in various postural and exertional limitations). This Court concludes the analysis has met the substantial-evidence standard.

Relatedly, Plaintiff's next argument is that the ALJ did not adequately consider a statement from Dr. Jachna, in which he opined Plaintiff's "functioning would be worse when he was having a migraine." (Doc. 8 at 9–10). He takes issue

with the ALJ's consideration of Plaintiff's unremarkable medical-examination results, including those from Dr. Jachna's practice. (Doc. 8 at 9). Applicable regulations guide the ALJ to determine the degree of persuasiveness of a medical opinion by considering both the "supportability" (the more support the source offers, the more persuasive the opinion will be) and "consistency" (the more consistent the opinion is with the other evidence, the more persuasive it will be) of the statement. 20 C.F.R. § 404.1520c(b)(1), (c)(1). In relevant part, the ALJ discussed the April 23, 2020, opinion from Dr. Jachna. He described how Dr. Jachna opined Plaintiff

> could never relate to coworkers or deal with the public, rarely deal with supervisors or with work stress, occasionally maintain concentration and attention, rarely understand complex job instructions, occasionally understand detailed job instructions, and constantly understand simple work, and rarely behave in an emotionally stable manner or relate predictably in social situations . . . . Dr. Jachna further opined [Plaintiff] would miss more than four days of work per month.

(R. at 616). Then, the ALJ weighed both the consistency and supportability factors, finding the opinion was inconsistent with the objective record for various reasons and supported mostly by Plaintiff's self-reports. (R. at 616). Not included in the ALJ's analysis of Dr. Jachna's opinion was the statement that Plaintiff's migraines "contribute to both mental and physical limitations." (R. at 469). An ALJ cannot "dismiss a line of evidence without any discussion," *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013), but the regulations explicitly provide that an ALJ is "not required to articulate how [he] considered each medical opinion . . . from one medical source individually[,]" 20 C.F.R. § 404.1520c(b)(1). Instead, in light of the voluminous case record, the ALJ is allowed to use a single analysis for each medical source. §

21

404.1520c(b)(1). The ALJ here has not run afoul what was required of him in assessing Dr. Jachna's opinion.

Another issue Plaintiff raises with this analysis is that Dr. Jachna's opinion was found to be unsupported by the ALJ because it was mostly based on self-reports. (Doc. 8 at 9-10). This is a variation of other arguments that this Court has addressed. Further, Plaintiff's characterization of the ALJ's analysis is misleading. He asserts that the ALJ improperly relied on the lack of objective medical evidence in dismissing Dr. Jachna's opinion related to his migraines, which could be error, but that is not actually what the decision states. The ALJ pointed to a lack of objective medical records when discussing only physical impairments:

> Finally, it appears that support for this opinion is heavily reliant on the claimant's self-reports, rather than objective findings as the claimant reported his back and foot pain to be part of his need for regular breaks and his physical exam findings generally note mildly limited motion in his lumbar spine but good range of motion in his lower extremities with good strength, intact sensation and reflexes and a normal gait without an assistive device[.]

(R. at 616). As such, the Court rejects Plaintiff's argument and finds that the ALJ did not err in his analysis of Dr. Jachna's statement.

Plaintiff briefly mentions that the ALJ's summary of the medical record focuses on other impairments. (Doc. 8 at 13). The Court agrees with the Commissioner that an ALJ's decision is read as a whole, and the ALJ summarized migraine-related evidence within the second step of the sequential analysis and considered Plaintiff's migraines in the work-related limitations. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Where exactly the ALJ mentioned the evidence is not important upon

review. *Taylor v. Kijakazi*, No. 22-cv-32, 2023 WL 334601, at *5 (N.D. Ind. Jan. 20, 2023). Therefore, this contention lacks merit and does not require further discussion.

Lastly, Plaintiff states that the ALJ cannot rely on the medical opinions of state agency consultants Dr. David Voss and Dr. Ranga Reddy because they failed to consider Plaintiff's "testimony that he had to lie down in a dark room and sleep for two to three hours" when he had a migraine. (Doc. 8 at 13–14). Arguing irrelevance, the Commissioner states the ALJ considered Plaintiff's symptoms related to his migraines himself; thus, any reasoning to the contrary is misplaced. (Doc. 13 at 5–6). In support, Plaintiff cites to *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014). In *Moon*, the Seventh Circuit criticized the ALJ's unsupported analysis of migraine evidence and rejected the argument that the opining doctors sufficiently took into account the plaintiff's migraines, thus relieving the ALJ of his duty to do so, too. *Id*. at 722–23. Plaintiff's argument is not bolstered by this case law; in fact, the factual circumstances are reversed. Here, Plaintiff is contending the opining doctors, not the ALJ, failed to consider all relevant information related to his migraines. This argument again can be reduced to Plaintiff's disagreement with which work-related limitations the ALJ found to be supported by and consistent with the objective record. (Doc. 13 at 11) ("[Plaintiff's] testimony supports a finding his migraines are disabling."). For the same reasons discussed herein, this argument is without merit, as the ALJ's consideration of Plaintiff's self-reports was proper.

As all of Plaintiff's arguments are rejected, the relief requested in his Brief (doc. 8) is denied. As a note, "[n]o one, including the ALJ, is saying the plaintiff does

23

not experience pain; but being unable to work without pain does not entitle someone to disability benefits." *Elaina M.*, 2023 WL 4707557, at *8. While this Court is aware that migraines present a challenging impairment in disability claims, it must remain mindful of the deference underpinning the substantial-evidence standard. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## CONCLUSION

IT IS THEREFORE ORDERED that the relief sought in Plaintiff's Brief (doc. 8) is DENIED, while the relief sought in Defendant Commissioner's Brief (doc. 13) is GRANTED. The decision of the ALJ is AFFIRMED. The Clerk is DIRECTED to substitute Martin O'Malley as Defendant Commissioner in this case pursuant to Federal Rule of Civil Procedure 25(d). As all issues have been disposed of, this matter is TERMINATED.


SO ORDERED.

Entered this 13th day of March 2024.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
